United States Court of Appeals
Fifth Circuit
**F I L E D**
March 1, 2006
Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

RECEIVED
FEB 0 1 2006
ROY, KIESEL, KEEGAN, & DeNICOLA

No. 05-30323

XCALIBER INTERNATIONAL LIMITED LLC; ET AL,

                Plaintiffs,

XCALIBER INTERNATIONAL LIMITED, LLC,

                Plaintiff-Appellant,

VERSUS

CHARLES C. FOTI, JR., IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL, STATE OF LOUISIANA,

                Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, DeMOSS, and CLEMENT, Circuit Judges.

PER CURIAM:

    Plaintiff-Appellant Xcaliber International Limited, LLC ("Appellant or "Xcaliber"") appeals the district court's order dismissing under Federal Rule of Civil Procedure 12(b)(6) Appellant's federal and state free speech, equal protection, and procedural due process claims. We vacate and remand.

    Since 2003, Appellant has manufactured tobacco products and distributed them primarily in Louisiana, Kansas, and Oklahoma. Louisiana is one of many states that during the mid-1990s, sued the

country's largest tobacco manufacturers to recover health care costs related to smoking. In 1998 these states signed the Master Settlement Agreement (the "Agreement"), which settled the litigation between them and four major tobacco manufacturers. The original four manufacturers are referred to as Original Participating Manufacturers ("OPMs"). Xcaliber is not an OPM.

The Agreement released OPMs from all tobacco-related legal claims initiated by the states. In return, each OPM agreed to make annual payments into a collective fund with each OPM's contribution determined primarily by multiplying an agreed sum that increased each year by each OPM's respective cigarette market share. The total of all payments was then to be allocated among the states based on a fixed formula, with Louisiana receiving approximately 2.26% of the total as its "allocable share." The Agreement also placed various restrictions on each OPM. For example, it (1) banned political lobbying; (2) restricted trade association activities; (3) prevented legal challenges to various state tobacco laws; and, (4) prohibited some forms of advertising.

Other tobacco manufacturers were later given the opportunity to join the Agreement. Many did and are referred to as Subsequent Participating Manufacturers ("SPMs"). OPMs and SPMs are collectively referred to as PMs. Xcaliber is not an SPM. Tobacco manufacturers that are not OPMs or SPMs are referred to as Non-Participating Manufacturers ("NPMs"). Xcaliber is a NPM.

2

Standing alone, the Agreement should put PMs at a cost disadvantage in comparison to NPMs. PMs inevitably must raise prices in order to stay profitable at a rate similar to the pre-Agreement rate and at the same time satisfy their payments under the Agreement. Thus, NPMs like Xcaliber could sell at lower prices and potentially increase their market share.

To neutralize this effect, the Agreement requires each state to enact legislation, which in Louisiana is codified at L A. REV. STAT. ANN. §§ 13:5061-5063. The statute requires every NPM selling cigarettes in Louisiana to either (1) become a PM under the Agreement's terms, or (2) deposit money annually into an escrow account. See § 13:5063. The amount to be deposited is calculated by multiplying the numbers of cigarettes sold in the state by a fixed charge listed in the amended statute that increases over time. See § 13:5063 C.(1). The interest accrued on the escrowed funds is paid out to the NPM, and the principle is either paid to the state to satisfy a judgement entered against such NPM, or returned to the NPM if twenty-five years pass without such a judgment. See § 13:5063 C.(2).

Until 2003, the statute also contained the following provision:

> (b) To the extent that a [NPM] establishes that the *amount it was required to place into escrow in a particular year was greater than the state's allocable share of the total payments that such manufacturer would have been required to make in that year under the [Agreement]* ... had it been a [PM], the excess shall be

3

released from escrow and revert back to such [NPM].

§ 13:5063 C.(2)(b)(LEXIS through 2005 Sess.)(emphasis added). This provision created what Appellee refers to as a "loophole in the statute." That is, an NPM distributing tobacco in all states had an escrow obligation approximately the same as if it were a PM under the Agreement; but, an NPM distributing in only one or a few states could have recouped some of its escrow payments for all but those states' allocable percentages under the Agreement. Therefore, in 2003, Louisiana amended § 13:5063 C.(2)(b) to read:

> (b) To the extent that a [NPM] establishes that *the amount it was required to place into escrow on account of units sold in the state in a particular year was greater than the [Agreement] payments* ... that such [NPM] would have been required to make on account of such units sold had it been a [PM], the excess shall be released from escrow and revert back to such [NPM].

LA. REV. STAT. ANN. § 13:5063 C.(2)(b) (LEXIS through 2005 Sess.) (emphasis added); see also 2003 La. ALS 925.

Because Appellant distributes products in only a few states, it formerly utilized the "loophole" in the original statute but can no longer do so post-amendment. Thus, Appellant challenges the statute in its amended form.

Xcaliber filed suit against Appellee, seeking a declaratory judgment that the amended statute is unconstitutional. Xcaliber alleged that the statute (1) violates the First Amendment, Fourteenth Amendment, and Commerce Clause of the United States Constitution, and (2) violates its rights under corresponding

4

sections of the Louisiana Constitution. The district court dismissed each claim pursuant to Rule 12(b)(6) See FED. R. CIV. P. 12(b)(6). This timely appeal followed. Appellant does not challenge the dismissal of its Commerce Clause claim, but does challenge the dismissal of each of its other claims.

This Court reviews de novo a district court's decision to dismiss a complaint pursuant to Rule 12(b)(6). R2 Invs. LDC v. Phillips, 401 F.3d 638, 642 (5th Cir. 2005) Appellant's argument on appeal is that the amended version of § 13:5063 violates its federal and state constitutional rights to (1) free speech because it financially coerces Appellant into signing the speech-restrictive Agreement; (2) equal protection because it places a higher financial burden on Appellant than it does on other similarly situated tobacco companies; and (3) procedural due process because it fails to provide Appellants with a pre-deprivation hearing.

After a thorough review of the briefs, oral arguments of the parties, and relevant portions of the record, paying particularly close attention to Appellant's complaint, we conclude the district court erred in granting Appellee's motion to dismiss under Rule 12(b)(6). We VACATE the district court's order dismissing Appellant's claims and REMAND the case for further proceedings. **VACATED AND REMANDED.**

5